# DECLARATION OF ANDREW J. HOLLAND

Andrew J. Holland states the following facts under penalty of perjury:

1. My name is Andrew J. Holland. I am over the age of majority; suffer no legal disabilities and am a resident of the State of Georgia. I have personal knowledge of the facts herein.

2. I was employed as General Manager of Girls Galore, Inc. d/b/a Tease (formerly operating as Bliss Atlanta) (hereafter "Tease") from March 2014 through March 9, 2015.

3. At all times during my employment, Tease's primary business was the operation of nightclub and bar featuring nude dancing.

4. At all times during my employment, my primary responsibilities included overseeing daily operations of the club, supervision of the facility, including the main floor, valet, door security, and VIP rooms; human resources functions including hiring and firing and otherwise disciplining employees; scheduling; timekeeping; drafting weekly budgets; managing general business affairs concerning alcohol beverage licensing; purchasing alcohol beverages and other supplies; accounts payable; calculating daily receipts; and other managerial duties.

5. At all times during my employment, my supervisors at Tease were its owners, George Nazerian and Nicholas Stergion.

1

6. At all times during my employment, Tease failed to keep accurate records of its revenues.

7. At all times during my employment, Tease's accommodations include facilities known as "Skyboxes".

8. Skyboxes are a set of four rooms that accommodate 10-15 people.

9. At all times during my employment, Tease maintained a policy to assess patrons a minimum charge of $500 for use of skybox.

10. At all times during my employment, dancers were required to pay Tease "locker fees" on a per shift basis.

11. At all times during my employment, Dancers were also required to pay other fees, including payments to the house mom, DJ, valet, and for a breathalyzer test.

12. At all times during my employment, Tease collected breathalyzer fees from dancers on a per shift basis, whether or not a breathalyzer test was administered.

13. At all times during my employment, Tease maintained a policy to assess a 10% fee when converting a large U.S. currency note to smaller bills.

14. At all times during my employment, Tease maintained a policy to assess a 10% fee when patrons received cash in a credit card transaction.

15. Based on my observations, the approximate revenues of Tease in the past year were as follows:

| Day of Week | All Alcohol Sales | Skyboxes | Door Fees | Locker Fees | Other Dancer Fees | Credit Card Fees | Change Fees |
|---|---|---|---|---|---|---|---|
| Monday | $1,500 | $500 | $400 | $500 | $360 | $100 | $500 |
| Tuesday | $6,000 | $1,500 | $3,000 | $1,500 | $1,200 | $400 | $1,500 |
| Wednesday | $1,200 | $500 | $900 | $900 | $300 | $100 | $1,000 |
| Thursday | $1,200 | $200 | $400 | $500 | $300 | $100 | $300 |
| Friday | $3,000 | $2,500 | $1,000 | $1,000 | $900 | $200 | $1,000 |
| Saturday | $3,000 | $2,500 | $2,000 | $1,200 | $900 | $200 | $1,000 |
| Average per week | $15,900 | $7,700 | $7,800 | $1,200 | $3,960 | $1,100 | $4,400 |
| Average Weekly Total | $42,060 | | | | | | |
| Annual Total | $2,187,120 | | | | | | |

16. On numerous occasions, Nicholas Stergion told me that the club did not report large amounts of its revenues to the Internal Revenue Service.

17. At the end of every shift, I calculated the total revenues for the evening based on credit card receipts, cash from the registers, and separate envelopes of cash from the skyboxes, the valet, door fees, and all dancer fees.

18. At the end of every shift, I communicated the accurate total revenues to George Nazerian on a nightly basis.

19. At the end of every shift, Nicholas Stergion or George Nazerian entered lower incorrect amounts into a notebook as the official record of the club's revenues.

3

20. To my knowledge, accurate revenue numbers were never recorded in the club's records.

21. The numbers recorded in in the club's records equate to approximately 20% of the club's actual revenues.

22. The numbers recorded in the club's records failed to account for revenue generated by skybox sales, credit card fees, change fees, locker fees other fees paid by the dancers.

23. On January 15, 2015, I accepted service of process on behalf of Tease for lawsuits against Girls Galore, Inc. alleging unpaid minimum wages, including *Barnes vs. Girls Galore, Inc. d/b/a Bliss Atlanta et al.,* 1:14-cv-03946-SCJ and *Brummet et al. vs. Girls Galore, Inc. d/b/a Bliss Atlanta et al.,* 1:14-cv-04033-AT.

24. I delivered these documents to George Nazerian. Nicholas Stergion was present. Both men reviewed the documents.

25. On or about January 19, 2015, Nicholas Stergion and George Nazerian gathered boxes of documents relating to the club's revenues and employee records for the past 3 or 4 years.

26. On or about January 19, 2015, I observed that the document shredder in the club's office was full.

27. The document shredder has a capacity of approximately 2,000 sheets.

28. In the past, the document shredder had only been used to destroy declined credit card information. It was rarely used.

29. This was the first time I had ever seen it full.

30. A week or two later, I purchased a new shredder for the club because the old shredder had stopped working.

31. On or about January 19, 2015, Nicholas Stergion removed several boxes containing Tease's revenue and employee records and took them to his car.

32. As of March 9, 2015, the boxes of revenue and employee records had not been returned to the office.

33. Throughout my employment at Tease, I would frequently use the computer maintained in the club's back office.

34. Throughout my employment at Tease, I accessed the previous years' liquor sales maintained on the club's server for the purpose of creating year over year liquor sales comparisons on nightly, weekly, monthly, or annual basis.

35. The computer contained liquor sales information dating back several years to when the club had previous operated as Bliss Atlanta.

36. Based on my repeated observations of liquor sales data from past years, I estimate that in the three years prior to my employment at Tease, Bliss had average nightly liquor sales of $2,000.00.

37. To the best of my knowledge, no other revenue information from Bliss or Tease was recorded in the office computer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 20th day of March 2015.

_____
Andrew J. Holland